UNITED STATES

v.

**Tim T. CARROLL, 424 82 2252, Lance Corporal (E–3), U. S. Marine Corps.**

**NCM 76 2124.**

U. S. Navy Court of Military Review.

Sentence Adjudged 11 June 1976.

Decided 11 March 1977.

LT Paul C. Hurdle, III, JAGC, USNR, Appellate Defense Counsel.

CAPT Mark M. Humble, USMCR, Appellate Government Counsel.

Before NEWTON, Senior Judge, and CRANDELL and GLADIS, JJ.

GLADIS, Judge:

This is a companion case to *United States v. Hodges,* No. 76 2211, 54 C.M.R. 30, 2 M.J. 26 (N.C.M.R. 28 February 1977). Appellant was charged with attempted sale of mescaline, in violation of Article 80, UCMJ, 10 U.S.C. § 880; wrongful possession, transfer, and sale of 10 tablets of lysergic acid diethylamide (LSD) contrary to U.S. Navy Regulations, in violation of Article 92, UCMJ; wrongful possession of 737.1 grams of marijuana, and wrongful sale and transfer of 26.3 grams of marijuana, in violation of Article 134, UCMJ. Contrary to his pleas he was convicted at his general court-martial · bench trial of wrongful possession, transfer, and sale of 26.3 grams of marijuana. He was acquitted of the remaining charges and sentenced on 11 June 1976 to a bad conduct discharge, confinement at hard labor for 8 months, total forfeitures and reduction to pay grade E–1.[1]

The convening authority forwarded the record to another general court-martial authority for post-trial review because a subordinate had promised immunity to a prosecution witness. The new general court-martial authority approved the sentence without change. Subsequently, the Secretary of the Navy ordered the unexecuted portion of the sentence to confinement and forfeitures remitted, effective 17 December 1976, in a clemency action.

Appellant assigns the following errors:

I. THE COURT LACKED JURISDICTION OVER THE OFFENSE. *United States v. McCarthy,* 25 U.S. C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976).

II. APPELLANT WAS DENIED EQUAL PROTECTION OF LAW BY BEING SENTENCED UNDER ARTICLE 134, UNIFORM CODE

1. Before announcing the findings the military judge stated, in effect, that although the evidence demonstrated beyond a reasonable doubt that the accused possessed marijuana in excess of the amount transferred, he was not satisfied beyond a reasonable doubt that the accused had actual possession of 15 ounces found in the auto in which the transfer occurred. The judge initially found the accused guilty of attempted sale of mescaline in violation of U.S. Navy Regulations, but subsequently withdrew the finding and substituted a finding of not guilty because trial counsel had not established the existence of Article 1151.2, U.S. Navy Regulations.

OF MILITARY JUSTICE, RATHER THAN ARTICLE 92. *United States v. Courtney,* 24 U.S.C.M.A. 280, 51 C.M.R. 796, 1 M.J. 438 (1976).

III. APPELLANT WAS DENIED DUE PROCESS OF LAW BY THE MILITARY JUDGE'S ADMISSION INTO EVIDENCE OF TESTIMONY GIVEN UNDER A GRANT OF IMMUNITY, WHICH GRANT WAS NEVER REDUCED TO WRITING OR SERVED ON APPELLANT. *United States v. Webster,* 24 U.S.C.M.A. 26, 51 C.M.R. 76, 1 M.J. 216 (1975).

IV. TO APPELLANT'S SUBSTANTIAL PREJUDICE, THE STAFF JUDGE ADVOCATE'S REVIEW WAS DEFICIENT AND MISLEADING IN FAILING TO BRING TO THE REVIEWING AUTHORITY'S ATTENTION:

A. THE PROPER CONSIDERATION TO BE GIVEN TO TESTIMONY GIVEN PURSUANT TO A GRANT OF IMMUNITY.

B. THE MILITARY JUDGE'S STRONG CLEMENCY RECOMMENDATION.

We affirm.

## I

## JURISDICTION

Appellant contends that the court-martial lacked jurisdiction over his off-base possession, transfer and sale of marijuana. The offenses occurred in the vicinity of Headquarters, Marine Corps in Arlington, Virginia. The following facts are gleaned from the record of trial. Appellant and Corporal H had both spoken in the barracks to Corporal S about a planned shipment of "speed" and heroin that they were bringing into Headquarters, Marine Corps from Detroit, Michigan. (R. 42). H told S that the shipment was a trial run. H would be "bringing that down every two weeks in large quantities along with however many pounds of marijuana he wished to buy at a

time. He would be bringing this to the base after every pay day." (R. 48). S advised Staff Sergeant D, a CID investigator. Two days later, on 30 January 1976, D asked S to arrange a purchase before the fact that S was cooperating with CID was revealed. That afternoon S, who was at Headquarters, Marine Corps in the Navy Annex in Arlington, Virginia, telephoned H and asked if he would be willing to sell him drugs. He arranged to buy one bag of marijuana for $20 and 10 mescaline pills for $2 each at H's auto which was parked across the street from the Navy Annex. D searched S in the basement of the Annex and gave him 4 ten-dollar bills, recording the serial numbers. S and his wife, who was a PFC, walked from the Annex out the pedestrian gate and up the street to H's auto which was parked across the street from and in front of the Annex. D followed at a distance. S and his wife were the first arrivals at the auto. Appellant subsequently arrived with Corporal B and Lance Corporal P. Corporal H arrived afterwards. Appellant unlocked the car doors. S and P entered and sat in the rear seat. Appellant entered and sat in the right front seat. He bent over to a laundry bag which was on the floor in the front seat, pulled out several bags of marijuana, and handed one to S.

He pulled out a film cannister and gave S 10 pills which appellant said were mescaline. S handed the $40 he had received from D to appellant. S left the car and was asked by H, who was standing there talking to S's wife, if he was satisfied, if appellant had given him the "stuff", and if S had paid appellant. S and H shook hands.

In order to determine whether an offense committed off-base by a service member is service connected within the meaning of *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and, consequently, whether it is triable by court-martial, the jurisdictional criteria enunciated in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), must be carefully weighed. *United States v. Moore,* 24 U.S.C.M.A. 293, 52 C.M.R. 4,

1 M.J. 448 (1976). The issue turns on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society and on whether the distinct military interest can be adequately vindicated in civilian courts. *Schlesinger v. Councilman*, 420 U.S. 738 at 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). Jurisdiction may not be predicated solely on the military status of the wrongdoer and the victim. *United States v. Hedlund*, 25 U.S.C.M.A. 1, 54 C.M.R. 1, 2 M.J. 11 (Interim) (1976). Merely because the recipient of the contraband is a service member is insufficient, in and of itself, in drug cases to establish service connection. *United States v. McCarthy, supra.* Off-base, off-duty use of marijuana by a serviceman, standing alone, does not establish court-martial jurisdiction. *United States v. Williams*, 25 U.S.C.M.A. 176, 54 C.M.R. 284, 2 M.J. 81 (Interim) (1976). An *ad hoc* approach must be taken in each case, balancing the significant jurisdictional criteria.

█ Jurisdiction is not automatically lost once a fixed boundary is crossed. Some offenses from the very location of their occurrence just outside the reservation can be as service-connected as those occurring inside the boundary when they threaten the security of the reservation itself or of persons or property thereon. *See Relford, supra*, 401 U.S. at 369, 91 S.Ct. 649; *United States v. McCarthy, supra; United States v. Mitchell*, 54 C.M.R. 325 at 328, 2 M.J. 1020, at 1023 (Interim) (A.C.M.R.1976).

In *United States v. McCarthy, supra*, the Court of Military Appeals had occasion to consider whether off-base transfer of three pounds of marijuana to a fellow serviceman was service connected. Weighing the *Relford* criteria, the Court found that the following four factors were sufficient to vest a court-martial with jurisdiction.

1. The formation of the criminal intent for the offense on-post.

2. The substantial connection between the defendant's military duties and the crime.

3. The transferee's being engaged in the performance of military duties, known to the defendant, at the time the agreement to transfer was reached.

4. The threat posed to military personnel, and hence the military community itself, by the transfer of a substantial quantity of marihuana to a fellow soldier who was a known drug dealer.

█ The pervasive military interest recognized in *United States v. McCarthy, supra*, may be engendered by the potential for both harm to servicemen individually and for the disruption of essential military relationships which exists when traffic in contraband is conducted in and around a military unit. *United States v. Zorn*, 54 C.M.R. 198, 2 M.J. 1012 (Interim) (A.C. M.R.1976). Drug trafficking among members of a military unit poses a serious threat to the security and discipline of the unit even though the actual transaction occurs off-base. *See United States v. Goad*, 54 C.M.R. 919, 1 M.J. 1106 (Interim) (N.C. M.R.1977). Drug trafficking between subordinates and superior noncommissioned officers in a unit undermines discipline in that unit. *See United States v. Eggleston*, 54 C.M.R. 634, 2 M.J. 1066 (Interim) (A.C. M.R.1976). Here, both seller and purchaser were assigned to the same unit, Company "A", Headquarters Battalion. Appellant was a key punch operator in the Computer Support Section. The purchaser was a computer programmer. They associated during duty and off-duty hours associated during duty and off-duty hours in the barracks. (R. 42; P.E. 9). The criminal scheme was formulated on a military installation. Appellant and Corporal H announced to Corporal S in the barracks that they were bringing a shipment of controlled substances from Detroit into Headquarters, Marine Corps. (R. 42). In effect, they were advertising on base that controlled substances were for sale. *Cf. United States v. Batson*, 54 C.M.R. 488, at 492, 2 M.J. 716, at 720 (Interim) (A.F.C.M.R.1976). The eventual pay day sale of marijuana in close proximity to a military installation was the natural outgrowth of appellant's general discussion in the barracks with Corporal S.

Cf. United States v. Gash, 54 C.M.R. 463, 2 M.J. 707 (Interim) (A.F.C.M.R.1976). Subsequently, S made specific arrangements for his purchase in a telephone conversation with Corporal H while S was in the Navy Annex during duty hours. The amount of marijuana actually sold was neither vast nor insubstantial.[2] As in McCarthy, the criminal venture was developed by servicemen who had associated in their military unit. Weighing the Relford jurisdictional criteria we find that the military interest in deterring appellant's offenses was distinct from and greater than that of civilian society and could not be adequately vindicated in the civilian courts.

Under the circumstances of this case the following Relford factors provide a sufficient basis for court-martial jurisdiction:

1. The offenses were the outgrowth of a criminal scheme for importation of controlled substances into a military installation which was apparently conceived and clearly advertised on a military installation.

2. Specifics of the transaction were arranged while the purchaser was on a military installation during duty hours.

3. The actual transfer occurred in close proximity to a military installation.

4. Appellant's marijuana sale to a superior noncommissioned officer and fellow member of his military unit in the vicinity of a military installation posed a threat to the security and discipline of the installation and the unit.

5. Appellant's sale and possession incident to sale of marijuana flouted military authority.

Appellant's possession and sale of marijuana had their genesis in a scheme to bring drugs from afar to a distribution center for servicemen, readily accessible to the military installation. See United States v. Turner, 54 C.M.R. 213, 1 M.J. 1035 (Interim) (N.C.M.R.1976), pet. den., No. 31,375, —— M.J. —— (U.S.C.M.A. 8 February 1977); United States v. Gash, supra. Offenses which stem from on-base advertising to ser-

vice members that controlled substances are for sale pose a threat to the discipline and security of the installation and its military personnel, even though the physical transfer occurs off-base. Appellant did not commit his offenses while blended into the general civilian populace. The military interest in deterring his offense was distinct from and substantially greater than that of civilian society and could not be adequately vindicated in the civilian courts. The offenses were service-connected and triable by court-martial. The first assignment of error lacks merit.

II

EQUAL PROTECTION

■ Appellant claims that he has been prejudiced by being sentenced for his offenses under Article 134, rather than Article 92. Assuming that the military judge in this case, which was tried before the Court of Military Appeals decided United States v. Courtney, supra, believed the maximum penalty to include confinement at hard labor for 5 years rather than 2 because appellant's multiplicious marijuana offenses were charged under Article 134, we shall eliminate any prejudice by reassessment of the sentence.

III

ORAL IMMUNITY

■ Appellant claims that he was denied due process because a grant of immunity to the key Government witness was never reduced to writing or served upon appellant. The subject was raised at trial where witnesses testified concerning immunity. The Government's failure to comply with the rule in United States v. Webster, supra, has been waived by appellant's failure to present the matter to the trial judge and invoke the remedies for non-compliance set forth in Webster. The assignment of error lacks merit.

2. Appellant sold 26.3 grams of marijuana. About 40 marijuana cigarettes can be made from approximately 22 grams of marijuana. Lingeman, Drugs From A to Z, p. 130.

## IV

## STAFF JUDGE ADVOCATE'S REVIEW

█ Appellant now assails the staff judge advocate's review for alleged inadequacies in the advice concerning testimony under a grant of immunity and the military judge's recommendation for partial suspension of the sentence. Defense counsel was served with a copy of the review in accordance with the mandate of *United States v. Goode,* 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975), and did not challenge it or submit comments within 5 days, thereby waiving the alleged deficiencies now complained of. The assignment of error lacks merit.

The court-martial order does not accurately set forth specification 1 under Charge II and should be corrected by supplemental order. The findings of guilty as approved on review below and, upon reassessment, the sentence as previously approved are affirmed.

Senior Judge NEWTON and Judge CRANDELL concur.